The State, ex rel. Brown, Secy. of State, et al., *v.* Ferguson, Aud., et al.

[Cite as State, ex rel. Brown, v. Ferguson (1972), 32 Ohio St. 2d 245.]

(No. 72-308—Decided December 15, 1972.)

248

*Messrs. Topper, Alloway, Goodman, De Leone & Duffey* and *Mr. John M. McElroy*, for relators.

*Mr. William J. Brown*, attorney general, and *Mr. James A. Laurenson*, for respondents.

CORRIGAN, J. Section 22 of Article II of the Ohio Constitution provides:

"No money shall be drawn from the treasury, except in pursuance of a *specific appropriation, made by law*; and no appropriation shall be made for a longer period than two years." (Emphasis added.)

This section clearly indicates that the relator will not be entitled to recover the sum of $1,462.50 for his services (1) if the vetoed language was not a specific appropriation, or (2) if it was properly vetoed by the Governor, since Section 16 of Article II of the Ohio Constitution empowers

the Governor to veto items of appropriation and requires repassage of vetoed portions of acts to validate them.

In interpreting Section 22 of Article II of the Ohio Constitution, and also Section 29, Article II, which provides that no compensation may be paid on any claim unless the subject matter shall have been provided for by pre-existing law, this court stated, in paragraph two of the syllabus of *Grandle* v. *Rhodes* (1959), 169 Ohio St. 77:

"Under the provisions of Sections 22 and 29, Article II of the Constitution of Ohio, before money may be taken from the state treasury specific authorization therefor must be by action of the General Assembly in the manner prescribed, and, where it appears that there has been no authorization by the General Assembly for the withdrawal of funds, the doors of the state treasury must remain closed to those seeking attorney fees for services rendered in a taxpayer's successful action to prevent the expenditure of public funds."

In *State, ex rel. Kauer,* v. *Defenbacher* (1950), 153 Ohio St. 268, this court held, in paragraph three of the syllabus:

"Where the director of a department has been authorized by law to expend money for certain additions and betterments, an appropriation to his department for additions and betterments, without specifying any particular additions or betterments, constitutes, within the meaning of Section 22 of Article II of the Constitution, a specific appropriation of money for those additions and betterments which he had previously been authorized by law to make."

In *Defenbacher,* the Director of Highways had sought under the appropriation act to expend money for the study of a project to construct a turnpike. In determining whether a capital outlay for additions and betterments might include a study of highway improvements contemplated by the act giving the director authority to make expenditures, the court relied on Section 4 of the appropriation bill itself. This section gave the director power to use any funds appropriated "* * * for the preparation of

preliminary plans for construction of * * * improvements."

It is apparent that the General Assembly may specify a purpose for which an appropriation is to be spent, and that an appropriation, although not in itself specific as to the amount but the purpose of which is reasonably within that authorized by the General Assembly, is a specific appropriation under Section 22 of Article II of the Constitution.

This has been the position taken by several Ohio appellate courts, most notably by the Court of Appeals for Franklin County in *Long* v. *Bd. of Trustees* (1926), 24 Ohio App. 261.

In *Long*, as stated in paragraph four of the headnotes:

"Where the Legislature makes a specific appropriation in favor of a rotary fund, and the scope and purpose of such fund is defined by the Appropriation Act in terms which fairly and reasonably include the use of said funds for the purpose of maintaining said book and supply store, the appropriation is specific, within the meaning of Section 22, Article II, of the state Constitution."

The court held that the use of appropriation funds for the maintenance of a book and supply store for students was "* * * an enterprise reasonably incidental to the main purpose of the university." The court stated further that "it is not necessary that the expenditures should be minutely described in the appropriation bill."

The item in the present case specifically authorizes the Secretary of State "* * * at the expense of the state of Ohio, [to] employ legal counsel of his own choosing to represent him as Secretary of State * * *."

The function of the Attorney General's office is set out in R. C. 109.02, which specifies the duties of the office. Any appropriation to the Attorney General must of necessity be directed to accomplishing those duties. The principal duty of the Attorney General's office is to provide legal counsel to state officials.

We are of the opinion, therefore, that the appropriation providing for the payment of legal expenses to independent counsel employed by the Secretary of State is fair-

ly and reasonably incidental to the purpose of the appropriation for the Attorney General.

The remaining question for this court to consider is whether or not the Governor's veto of the language in question was proper as an "item" veto under Section 16, Article II of the Ohio Constitution. That section provides in part:

"The Governor may disapprove any item or items in any bill making an appropriation of money and the item or items, so disapproved, shall be void, unless repassed in the manner herein prescribed for the repassage of a bill."

There are no Ohio cases defining an "item" or an "item veto"; however, there are a number of cases from other jurisdictions having similar constitutional provisions on the subject.

The Supreme Court of Arizona held, in *Fairfield* v. *Foster* (1923), 25 Ariz. 146, 214 P. 319, that the Governor's veto, pursuant to a similar state constitutional provision, of language itemizing the individual wages and salaries of various classes of employees of the Corporate Commission, was a proper veto, even though the appropriation for the Corporate Commission was a lump-sum appropriation: "For salaries and wages . . . . . . . .$53,880."

In so holding, the court, at page 156 in its opinion, defined the term "item" as a "separate particular in an enumeration, account or total."

The court, in applying this definition to the appropriation in question, stated further, at page 157:

"But certainly, whenever the Legislature goes to the extent of saying in any bill appropriating money that a specified sum of money raised by taxation shall be spent for a specified purpose, and that alone, while other sums mentioned in the bill are to be used otherwise, no matter what language it may be disguised under, it is, nevertheless, within both the spirit and letter of the Constitution, an 'item' within the bill, and may be disapproved by the Governor without affecting any other items of appropriation contained therein."

The Supreme Court of Florida, in *Green* v. *Rawls*

(Fla. 1960), 122 So. 2d 10, adopted this "yardstick" in determining that the Governor's veto of a similar item in an appropriation bill which specified a maximum salary for specified classes of employees was valid. The court concluded, at page 17:

"Therefore, while the Legislature has ultimate control over appropriations it cannot, by any device, deny the chief executive the power of veto over whatever they do."

The Supreme Court of Pennsylvania also defined the word "item" in *Commonwealth* v. *Barnett* (1901), 199 Pa. 161, 48 A. 976, in these terms:

"The general idea conveyed by the word is well understood and with that in our minds the precise meaning in the Constitution is shown by the context to be the particulars, the details, the distinct and severable parts of the appropriation."

That court relied on the purpose of the "item veto" provision in providing an executive check on "riders" and "log rolling" and, by means of example, expanded the definition of "item" in stating:

"If the Legislature, by putting purpose, subject and amount inseparably together and calling them an item, can coerce the Governor to approve the whole or none, then the old evil is revived which this section was intended to destroy."

Upon the basis of the reasoning in these decisions, we conclude that those provisions in an appropriation bill which are separate and distinct from other provisions in the same bill, insofar as the subject, purpose, or amount of the appropriation is concerned, are items within the meaning of Section 16, Article II of the Ohio Constitution.

In the present case, the appropriation enabling the Secretary of State to designate and employ independent counsel and to compensate such counsel from the appropriation for the Attorney General is an entirely distinct and separate appropriation from that enacted for the Attorney General.

The subject matter for the vetoed language concerns

an appropriation for the Secretary of State, not the Attorney General. The purpose of the appropriation is to suspend R. C. 109.02, insofar as it applies to the Secretary of State's office, and compensate independent counsel retained by the Secretary of State. The funds appropriated for the Secretary of State depend only indirectly on the appropriation for the Attorney General; they are utimately disbursed from the fund available to the Controlling Board.

If the vetoed language in question were severed from the appropriation for the Attorney General, both provisions could stand alone. Since the Attorney General is entitled to reimbursement from the Controlling Board for any expenditure to the Secretary of State, the total amount of the appropriation for the Attorney General remains the same.

Likewise, the vetoed language merely authorizes a suspension of R. C. 109.02, inasmuch as it relates to the Secretary of State's office and provides compensation for counsel from the fund available to the Controlling Board.

Neither section is dependent upon the other, but each authorizes the expenditure of a separate sum of money for two distinct purposes. Each is, therefore, a separate "item" of appropriation.

The history of the Ohio "item veto" provision is similar to that of the other cited jurisdictions. The evil which it was designed to prevent is the same. It is the holding of this court that the Governor's veto was validly exercised in accordance with the rights of that office, as established by Section 16 of Article II of the Ohio Constitution.

The writ of mandamus is, therefore, denied.

*Writ denied.*

O'NEILL, C. J., HERBERT, STERN, LEACH and BROWN, JJ., concur.

SCHNEIDER, J., concurs in the syllabus and the judgment.

SCHNEIDER, J. Although concurring in the syllabus and judgment, I am impelled to point out that the court's opinion seemingly proceeds upon the assumption that the disputed "appropriation providing for the payment of legal expenses to independent counsel employed by the Secretary of State" would be valid in the absence of a veto.

The validity of the General Assembly's including language suspending permanent law in an item of appropriation for current expenses of the state government remains an open question still to be decided by this court. Query: Is the referendum as to that language thereby foreclosed? See Sections 1(c) and 1(d) of Article II of the Ohio Constitution.

However, since the court decided the case on the validity of the veto, no decision on the validity of the vetoed language was necessary.