The COLORADO GENERAL ASSEM-
BLY, Plaintiff-Appellee,

v.

The Honorable Richard D. LAMM,
Governor, Defendant-Appellant.

No. 84SA79.

Supreme Court of Colorado,
En Banc.

Aug. 26, 1985.

Rehearing Denied Sept. 23, 1985.

Welborn, Dufford, Brown & Tooley, Philip G. Dufford, Gregory A. Ruegsegger, Douglas G. Brown, Rebecca C. Lennahan, William A. Hobbs, Margaret C. Makar, Denver, for plaintiff-appellee.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Denver, for defendant-appellant.

LOHR, Justice.

This case requires us to determine the constitutional validity of the governor's vetoes of certain provisions in the general appropriation bill for fiscal year 1982 and in a supplemental appropriation bill for fiscal year 1981. We also are presented with the question of the constitutionality of the portions of the bills purportedly vetoed. The district court determined that the vetoes, which deleted legislative specifications of the revenue sources from which funding for certain appropriations was to be derived, did not relate to entire "items" and so were not within the scope of the governor's power under section 11 of Article IV of the Colorado Constitution to veto "distinct items" in an appropriation bill. The district court also ruled that the restrictions on revenue sources for appropriations did not violate separation of powers principles by impermissibly intruding on the administrative functions of the executive, but were enacted in valid exercise of the general assembly's plenary power over appropriations. We affirm the district court judgment sustaining the legislative enactments and invalidating the challenged vetoes.

I.

In 1982, the General Assembly of the State of Colorado enacted House Bill No. 1284 (the 1982 long bill) appropriating money to provide for the payment of the ordinary operating costs of the executive, legislative, and judicial departments of the state for the fiscal year beginning July 1, 1982.

Ch. 1, sec. 1, 1982 Colo.Sess.Laws 1. The 1982 long bill consisted of a lengthy and detailed list of authorized expenditures for the various operating costs of the three branches of government, together with a designation of the amount of each authorized expenditure to be derived from the general fund, cash funds, and federal funds. Cash funds, to which this appeal relates, are revenues obtained from all non-general fund sources and all nondirect federal fund sources. 1982 long bill, section 2(e). They include, for example, moneys received by a state agency as a result of its activities, such as performance of services for third parties and sale of licenses and permits.

In a number of instances in the 1982 long bill, the legislature particularized the source or sources from which cash fund appropriations were to be obtained. For instance, in appropriating $14,916,537 for family health services to be provided by the department of health, the legislature specified that $1,730,863 was to come from cash funds and, in turn, listed five sources of those cash funds and designated the respective amount to be obtained from each source. In some appropriations, cash funds represented only a portion of the total moneys designated for a specified purpose; amounts to be derived from the general fund, federal funds, or both, were also specified.

On May 6, 1982, Hon. Richard D. Lamm, the Governor of the State of Colorado, approved the 1982 long bill with some exceptions. The governor purported to veto certain portions of the 1982 long bill designating the sources from which cash funding was to be obtained. See Appendix. In his May 6 veto message to the Colorado House of Representatives explaining his actions with respect to the 1982 long bill, the governor took the position that by designating the sources for cash funding the legislature was attempting to administer the appropriations and thus was impairing executive flexibility to determine the sources of cash to be utilized to meet the cash funds appropriations.

In 1982, the Colorado General Assembly also enacted House Bill No. 1261 (the 1981 supplemental appropriation bill) to accomplish certain changes in appropriations previously adopted for fiscal year 1981. Ch. 2, sec. 1, 1982 Colo.Sess.Laws 96. One such change was the reduction from $4,505,659 to $2,493,125 of the amount of cash funds to be obtained from the highway users tax fund for application toward various appropriations for the division of accounts and control in the department of administration. The governor purportedly vetoed this change by lining through the entire sentence that identified the source of cash funds for this appropriation as the highway users tax fund. See Appendix. In his April 2, 1982, veto message to the house of representatives, the governor explained that a higher limit on cash funds to be supplied from the highway users tax fund was justified.

The house of representatives attempted unsuccessfully to override the governor's veto of one portion of the 1982 long bill and the veto of the part of the 1981 supplemental appropriation bill at issue here. See Colo. Const. art. IV, §§ 11, 12. The general assembly did not seek to override any of the other vetoes at issue in this litigation.

In November of 1982, the Colorado General Assembly brought suit in Denver District Court seeking a declaratory judgment that the governor's vetoes of certain provisions of the 1982 long bill and the 1981 supplemental appropriation bill were invalid because they did not encompass complete "items" and therefore were not within the power of the governor to disapprove "distinct items" in an appropriation bill. See Colo. Const. art. IV, § 12. The defendants, including the governor, moved to dismiss the complaint on several grounds, including failure of the general assembly to obtain the governor's approval of the legislative resolution authorizing the lawsuit as allegedly required by section 39 of Article V of the Colorado Constitution, failure of the general assembly to override the gover-

nor's vetoes, absence of any justiciable issues, invalidity of the legislative designations of cash fund sources as violative of the doctrine of separation of powers established by Article III of the Colorado Constitution, invalidity of such designations as substantive legislation improperly included in an appropriation bill in contravention of section 32 of Article V of the Colorado Constitution, and validity of the challenged vetoes as proper item vetoes under Article IV, section 12, of the state constitution.[1] The general assembly later moved for summary judgment.

The district court held a hearing and denied the motion to dismiss to the extent that it was based on failure to obtain the

governor's approval of the resolution authorizing the lawsuit, failure of the legislature to override the vetoes, and absence of justiciable issues, and reserved ruling on the motion to the extent that it was based on other grounds. Thereafter, on January 17, 1984, the district court granted partial summary judgment for the general assembly, ruling that the challenged vetoes did not relate to entire items and so were not within the governor's constitutional veto power under section 12 of Article IV of the Colorado Constitution, that the designation of cash fund sources for appropriations was within the legislature's authority and did not violate separation of powers requirements, and that the other grounds for dismissal reserved for decision in the previ-

---

**1.** The relief originally sought by the general assembly was more extensive than that involved in the issues before us on appeal. The complaint asserted six claims for relief and named as defendants the governor, the controller, the executive director of the department of social services, the executive director of the department of health and of the department of institutions, the state board of education and its individual members, the commissioner of education, the executive director of the department of administration, the executive director of the department of labor and employment, the state commission on higher education and its individual members, the chief of the state patrol, and the executive director of the department of natural resources. The first claim sought a declaration that the governor's vetoes of certain provisions of the 1982 long bill, including the vetoes challenged in this appeal, were invalid. In the second through fifth claims for relief, the general assembly sought injunctive relief to prevent the defendant administrators and boards from expending or authorizing the expenditure of funds contrary to the provisions of the 1982 long bill that were allegedly invalidly vetoed by the governor and from taking other action contrary to legislative intent expressed in certain vetoed footnotes. In the sixth claim for relief, the legislature sought a declaration that the governor's veto of a cash-funding restriction in the 1981 supplemental appropriation bill was invalid and also prayed for injunctive relief to prevent the controller and executive director of the department of administration from expending or authorizing the expenditure of appropriated funds in a manner inconsistent with the require-

ments imposed by the purportedly vetoed restriction.

In ruling on the general assembly's motion for summary judgment and the defendants' motion to dismiss, the district court held that certain of the footnotes vetoed by the governor were invalid because they constituted substantive legislation and so could not be included in an appropriation bill because of the proscription in section 22 of Article V of the Colorado Constitution. Thus, the legislature had no basis to contest the validity of the vetoes of these footnotes, and the complaint was dismissed as to that portion of the claim. The district court also denied all requests for injunctive relief and dismissed all defendants except the governor.

The district court denied summary judgment on issues concerning the validity of the veto of certain provisions of the 1982 long bill concerning federal block grants, not at issue in this appeal. These issues were reserved for trial.

On January 17, 1984, the district court directed entry of final judgment pursuant to C.R.C.P. 54(b) with respect to dismissal of all defendants except the governor, dismissal of the claim concerning veto of the invalid footnotes found to constitute impermissible substantive legislation, denial of injunctive relief, and the determinations of invalidity of vetoes of conditions with respect to cash funding sources in certain appropriations in the 1982 long bill and the 1981 supplemental appropriations bill. These latter issues of veto invalidity are before us on the present appeal. No appeal was taken from the other portions of the judgment made final by the January 17, 1984, order.

ous ruling on the governor's motion to dismiss were not meritorious.[2]

The governor appealed to this court and now asserts three grounds for reversal. First, he contends that the legislature lacks standing to challenge the vetoes, and that in any event such challenges are not justiciable. Next, the governor argues that the legislative conditions specifying the sources of cash funding for appropriations are unconstitutional, both because they violate the separation of powers doctrine by intruding on the executive's authority to administer appropriations and because they are contrary to the constitutional mandate that provisions of substantive law not be included in an appropriation bill. Finally, the governor urges that the vetoes are effective because they are within the scope of his item veto power under section 12 of Article IV of the Colorado Constitution. Moreover, the governor takes the position that we should initially determine the constitutionality of the legislative specifications of cash funding sources and should not reach the issue of the validity of the vetoes unless we first find the challenged specifications constitutionally sufficient. We first address the questions of standing and justiciability, then consider the sequence in which the other issues should be determined, and lastly proceed to resolve them.

## II.

The governor asserts that the general assembly lacks standing to challenge the vetoes at issue here. The principal bases[3] for this position are two. First, the legisla-

ture sustained the vetoes by failing to repass the measures over the governor's vetoes. Second, the veto power is a legislative power and represents a constitutionally-created exception to the general assembly's legislative power; therefore, the general assembly has no legal interest entitled to protection with respect to the governor's exercise of the veto power. Additionally, the governor asserts that the question of veto validity is a political question and is not justiciable. We reject all these arguments.

In *Colorado General Assembly v. Lamm*, 700 P.2d 508 (Colo.1985), we considered the standing of the general assembly to challenge transfers of funds from the departments of the executive branch of government for which they were appropriated to other executive departments. The general assembly took the position that the transfers infringed upon its power of appropriation in contravention of Article III of the Colorado Constitution (separation of powers), section 2 of Article IV of that constitution (governor's executive power), sections 17, 32 and 33 of Article V of that constitution (appropriations power), and various Colorado statutes. We noted that:

> The resolution of standing issues requires a court to determine, based primarily upon the allegations contained in the complaint, '(1) whether the plaintiff was injured in fact [and] (2) whether the injury was to a legally protected right.' *Wimberly v. Ettenberg*, 194 Colo. 163, 168, 570 P.2d 535, 539 (1977).

*Id.*, at 516. The injury in fact requirement is rooted in Article VI of the Colorado

---

**2.** Neither party has challenged the district court's use of a summary judgment to resolve these issues.

**3.** The governor also notes that House Joint Resolution No. 1025, 1982 Colo.Sess.Laws 748, purports to authorize this lawsuit, but that the resolution "was never presented to the Governor for approval as required for legislation by article V, section 39 of the Colorado Constitution." In *Colorado General Assembly v. Lamm*, 700 P.2d 508 (Colo.Sup.Ct., 1985), however, we held that section 39 of Article V of the Colorado Constitu-

tion does not require that enactments that are not legislative in nature be presented to the governor for approval or disapproval, and that "[a] resolution by a legislative body authorizing litigation on behalf of itself cannot be deemed legislation, and is not legislative in nature." *Id.*, at 515. Therefore, the fact that House Joint Resolution No. 1025 was not submitted to the governor for approval does not impair the authority of the general assembly to institute this litigation.

Constitution, which limits judicial power to the resolution of actual controversies. *Id.,* at 516; *see Conrad v. City & County of Denver,* 656 P.2d 662 (Colo.1983). The requirement that the injury be to a legally protected right is grounded on prudential considerations of judicial self restraint. *Colorado General Assembly v. Lamm,* at 516. In *Colorado General Assembly v. Lamm,* we concluded that the allegations of infringement by the governor upon the legislature's constitutional and statutory appropriation power satisfied the requirement that the complaint allege injury in fact to a legally protected right. *Id.* at 516.

The analysis of standing in *Colorado General Assembly v. Lamm* is directly applicable here. The general assembly asserts that the governor exceeded the scope of his veto power by purporting to veto provisions of an appropriation bill that were not distinct items. By so doing, the argument proceeds, the governor has infringed on the legislature's constitutionally-based power of appropriation and has violated the constitutional requirement of separation of executive and legislative powers. *See* Colo. Const. art. III; Colo. Const. art. V, §§ 17, 32 and 33. The averments upon which the general assembly's arguments are founded satisfy the requirement of an allegation that an injury in fact has occurred to a legally protected right. *Colorado General Assembly v. Lamm.*

■ We find no merit in the contention that standing is absent here because the legislature's only remedy for an invalid veto of an appropriation bill provision is to muster the two-thirds vote of both houses necessary to pass a measure over the governor's veto. *See* Colo. Const. art. IV, §§ 11, 12. The general assembly has the power to enact legislation by vote of the majority of all members elected to each house. Colo. Const. art. V, § 22. Measures so enacted and thereafter presented to the governor become law unless disapproved by the governor. Colo. Const. art. IV, § 11. One specific limitation on the

governor's power of disapproval is that the veto of a part of a bill for appropriation of money must encompass distinct "items"; vetoes of parts of items are not within the gubernatorial power of disapproval. Colo. Const. art. IV, § 12; *Stong v. People ex rel. Curran,* 74 Colo. 283, 220 P. 999 (1923). Thus, the answer to the question whether a purported veto relates to a distinct item or only part of an item dictates whether a simple majority vote in both houses suffices to cause a bill to become law or whether a two-thirds vote in both the senate and the house of representatives is necessary to accomplish that result. To hold that the general assembly is foreclosed from challenging the validity of a gubernatorial veto but must instead summon a two-thirds majority to enact legislation even though the veto be invalid would upset the delicate constitutional balance between the executive and legislative branches of government. *See Commonwealth v. Dodson,* 176 Va. 281, 11 S.E.2d 120, 125 (1940). We hold that to preserve that balance it is essential that the judiciary have the ability to exercise its traditional function of constitutional interpretation and to scrutinize gubernatorial vetoes for constitutional validity. We therefore reject the governor's argument that the legislature's sole remedy for an invalid veto is to override it. Other courts that have been presented with this question have reached the same result. *Fergus v. Russel,* 270 Ill. 304, 110 N.E. 130 (1915); *State ex rel. Cason v. Bond,* 495 S.W.2d 385, 393 (Mo. 1973).

*In Re Interrogatories, Senate Resolution No. 5,* 195 Colo. 220, 578 P.2d 216 (1978), is not authority for a contrary conclusion. There, we sustained vetoes even though the governor did not return the vetoed bills to the house in which they originated within ten days after they were presented to him, as required by Colo. Const. art. IV, § 11. Notwithstanding the late return, the general assembly proceeded to reconsider the bills and sustained the vetoes or declared the bills "lost." We

held that the purpose of the ten-day return requirement was "to insure that the legislative branch shall have suitable opportunity to consider the Governor's objections to bills and on such consideration to pass them over his veto provided there are the requisite votes to do so." *Id.*, 195 Colo. at 224, 578 P.2d at 219. The legislative action reconsidering the bills in question demonstrated that the general assembly "had the time, and took the time, to consider the Governor's vetoes. The constitutional purpose was satisfied, and we rule that the bills ... did not become law." *Id.*

■ The limitation of item vetoes to distinct items has quite another purpose, that of preventing the governor from modifying an item of appropriation by accepting part and rejecting part. For reasons discussed previously, it would alter the delicate constitutional balance of powers to hold that the only legislative remedy for an invalid veto of a partial item is to override the veto by obtaining a two-thirds majority in each house. We are reinforced in this holding by our decision in *In Re Interrogatories of the Governor*, 195 Colo. 198, 578 P.2d 200 (1978), issued the same day as *In Re Interrogatories, Senate Resolution No. 5.* In the former case, we held a veto invalid for failure of the governor to file the vetoed bill in the office of the Secretary of State within thirty days after adjournment of the legislature, as required by Article IV, section 11 of the Colorado Constitution, where such adjournment prevented return of the bill to the house that originated it. In support of this conclusion, we noted the importance of enforcing the plain requirements of the constitution that prescribe the limits of the executive veto power. Constitutions must necessarily be interpreted to meet the needs of changing times, but the critical, constitutionally-prescribed boundary separating the executive and legislative powers must remain constant.

■ The governor's further argument that the general assembly has no legally protected interest in the validity of a veto because the veto itself is a legislative power withheld from the general assembly under the constitution will not survive a cursory examination. Certainly the governor possesses legislative power to the extent of that official's ability to veto legislation. *Stong v. People ex rel. Curran.* But this gubernatorial power is confined within its constitutional limits and does not extend to vetoes of a nature impermissible under the constitution. In order to protect its ability to enact legislation by majority vote, it is essential that the legislature be able to obtain a determination whether a purported veto is within the governor's power, and therefore valid, or outside the ambit of that power, and therefore an intrusion upon the legislative domain. We recognize standing in the general assembly to seek determination of the question whether a purported veto is invalid and therefore, if permitted to stand unchallenged, would cause injury in fact to the legislature's legally protected right and power to make appropriations by majority vote.

■ Finally, contrary to the governor's position, we do not believe that inquiry into the validity of a veto involves a political question, the resolution of which should be eschewed by the courts. Rather, the question is one traditionally within the role of the judiciary to resolve. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803) (it is peculiarly the province of the judiciary to interpret the constitution and say what the law is); *Barnes v. Kline*, 759 F.2d 21 (D.C.Cir.1984) (when a dispute arises concerning the constitutional functions of different branches of government, the courts have a duty to say what the law is, and this duty may not be avoided simply because one or both parties are coordinate branches of government). If the vetoes relate to distinct items within the meaning of Colo. Const. art. IV, § 12, the vetoes are valid; if they relate to parts of items they are not. *Stong v. People ex rel. Curran.* This question, the key to the resolution of

the dispute between the parties, requires interpretation of the constitution, a function at the very core of the judicial role.

█ In sum, we conclude that the general assembly has standing to challenge the validity of the governor's vetoes in the present case and that the question of veto validity is justiciable.

### III.

The governor asserts that we should first address the constitutionality of the vetoed legislation and then only if the legislation is determined to be constitutional should we examine whether the vetoes were valid. We discern no reason to accord primacy in order of consideration to either of these constitutional questions in this declaratory judgment action. The district court reached the same conclusion.[4]

We do not view *Anderson v. Lamm*, 195 Colo. 437, 579 P.2d 620 (1978), or *MacManus v. Love*, 179 Colo. 218, 499 P.2d 609 (1972), as authority mandating the order of consideration of issues contended for by the governor. In *Anderson v. Lamm*, the district court, in a declaratory judgment action calling into question the constitutionality of certain provisions in an appropriation bill and the constitutional validity of the governor's vetoes of those provisions, granted a motion to dismiss based on the conclusion that the portions of the statute in question were unconstitutional, and did not reach the issue of the validity of the vetoes. On appeal, we considered only the issues concerning the constitutionality of the statutory provisions for they were the only ones postured for review. This case reflects no determination of the proper sequence of resolving such claims. *MacManus v. Love* was also a declaratory judgment action involving the validity of a veto of a provision in an appropriation bill.

Both the issue of the validity of the veto and the question of the constitutionality of the underlying legislation were before us on appeal. We elected to consider the validity of the legislation first and, finding it unconstitutional, did not reach the question of the constitutionality of the veto. There is no suggestion in the report that the sequence of consideration of these questions was argued or contested. *MacManus v. Love* simply reflects a discretionary election to take up a particular issue first and is not authority that the order there selected is mandatory.

█ We believe that in considering the constitutionality of acts of two coequal branches of government neither is entitled to have the actions of the other examined first. Rather, in a declaratory judgment action such as the one before us, the courts may elect the order in which the issues are to be addressed based on such considerations as may be relevant under the circumstances of each individual case. In the case now before us we elect to consider the constitutionality of the vetoed legislation first and then address the validity of the vetoes.

### IV.

The governor contends that the vetoed provisions of the 1982 long bill and the 1981 supplemental appropriation bill are constitutionally invalid, without regard to the vetoes, for two distinct reasons. First, the provisions violate the separation of powers requirements of Article III of the Colorado Constitution. Second, they constitute substantive legislation, which is proscribed from inclusion in an appropriation bill by Article V, section 32 of the Colorado Constitution. We conclude that the provisions vetoed by the governor are not subject to either of these infirmities.

---

4. Other courts faced with similar challenges to a governor's item veto power have not felt constrained to address general constitutional challenges to legislative appropriations before resolving the item veto issue. *See Welden v. Ray*, 229 N.W.2d 706 (Iowa 1975); *State ex rel. Cason v. Bond*, 495 S.W.2d 385 (Mo.1973); *State ex rel. Sego v. Kirkpatrick*, 86 N.M. 359, 524 P.2d 975 (1974); *Jessen Assoc., Inc. v. Bullock*, 531 S.W.2d 593 (Tex.1975).

## A.

Article III of the Colorado Constitution provides for separation of governmental powers as follows:

The powers of the government of this state are divided into three distinct departments,—the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted.

 In broad outline, it is the province of the general assembly to enact legislation and the province of the executive to see that the laws are faithfully executed. *Anderson v. Lamm*, 195 Colo. 437, 579 P.2d 620 (1978). The delineation of the dividing line between these powers is often difficult and must be accomplished on a case-by-case basis. *Anderson v. Lamm*, 195 Colo. at 441–42, 579 P.2d at 623; *MacManus v. Love*, 179 Colo. 218, 221, 499 P.2d 609, 610 (1972). With respect to appropriations, the power of the legislature is plenary, subject only to constitutional limitations. *Anderson v. Lamm*, 195 Colo. at 441, 579 P.2d at 623; *MacManus v. Love*, 179 Colo. at 221, 499 P.2d at 610. "In order to fulfill [the] duty to faithfully execute the laws, the executive has the authority to administer the funds appropriated by the legislature for programs enacted by the legislature." *Anderson v. Lamm*, 195 Colo. at 442, 579 P.2d at 623; *accord MacManus v. Love*, 179 Colo. at 222, 499 P.2d at 610. Once an appropriation has been made, the legislative work is complete, and the executive's duty to administer the appropriation begins. *Anderson v. Lamm*, 195 Colo. at 442, 579 P.2d at 623. The general assembly must not interfere with the exercise of that power and "may not attach conditions to a general appropriation bill which purport to reserve to the legislature powers of close supervision that are essentially executive in character." *An-derson v. Lamm*, 195 Colo. at 442, 579 P.2d at 624. The general assembly, however, may condition the appropriation on extrinsic developments, such as the amount of federal funds that become available for use. *Anderson v. Lamm*, 195 Colo. at 443–45, 579 P.2d at 624–26. It is within the framework of these general principles that we must determine whether the provisions of the 1982 long bill and the 1981 supplemental appropriation bill vetoed by the governor impermissibly infringed on the executive power to administer appropriated moneys.

This is not a case where the governor complains that the vetoed provisions interfered with the administrative utilization of the appropriated funds. None of those provisions limit or direct the executive in putting the moneys to use. Instead, the governor contends that by limiting the cash-fund sources from which the moneys are to be derived the general assembly is exercising indirect control over the executive functions that generate the cash funds. That is, unless the fund-generating function produces enough money to satisfy the appropriation, the authorized amount of the appropriation will not become available for use. This, the governor argues, tends to influence activity levels in the cash-fund-producing functions, stimulating some activities that the executive might choose to conduct at a lower level of intensity were it not necessary to produce from these activities the cash necessary to fund the appropriations. The governor urges that this results in an infringement on the powers of the executive. In resolving this question we derive only general guidance from *Anderson v. Lamm*, which was concerned with provisions of a general appropriation bill with respect to contingencies in the amounts of appropriations as well as conditions and restrictions on the utilization of appropriated moneys.

 The general assembly has the responsibility of raising revenue, *see* Colo. Const. art. V, § 31, in order to provide a

source of appropriations for the expenses of the executive, legislative and judicial departments. *See* Colo. Const. art. V, § 32. The discharge of this responsibility necessarily requires that revenues be planned and monitored so that sufficient funds will be available for necessary appropriations. One planning device the general assembly has used, as illustrated by the 1982 long bill and the 1981 supplemental appropriation bill, is to designate whether funding for particular appropriations is to be derived from the state general fund, available federal funds, or cash funds to be produced by the activities of the various state agencies and departments. Nothing in the constitution limits the plenary power of the legislature to specify that an appropriation will be satisfied from one or another of these three sources, and the governor does not contend to the contrary.[5] Rather, he argues that specification of particular cash fund sources necessarily implicates the administration of the agencies from whose activities the funds are to be derived and thus impinges on the executive authority contrary to the separation of powers required by Article III of the Colorado Constitution. This is certainly one of those "crepuscular zones" in which delineation of the boundary between the legislative and executive powers is difficult and in which such line drawing is best accomplished on a case-by-case basis. *See Anderson v. Lamm*, 195 Colo. at 141–42, 579 P.2d at 623; *MacManus v. Love*, 179 Colo. at 221, 499 P.2d at 610.

In general, we believe it essential to the legislative power to raise revenue and appropriate for expenses that the general assembly be able to designate the source of funds to satisfy an appropriation and condition that funding on availability of moneys from the particularized source. *Cf. Anderson v. Lamm* (general assembly can appropriate moneys conditioned in amount upon the amount of federal moneys received); *MacManus v. Love* (same). On the other hand, it would be an infringement of executive power to mandate diversion of limited executive resources to a particular revenue-producing activity, at least in the absence of appropriate substantive legislation. *See Anderson v. Lamm*, 195 Colo. at 442, 579 P.2d at 623–24 ("general assembly is not permitted to interfere with the executive's power to administer appropriated funds, which includes the making of specific staffing and resource allocation decisions").

Although no such mandatory diversion is present in this case, undeniably a close particularization of the cash revenue sources and amounts to be used to meet an appropriation exerts an indirect pressure on the executive to allocate administrative assets and conduct administrative activities so as to generate revenues necessary to fund the appropriations fully. The record here, however, is barren of any evidence concerning the effect of the specification of the sources of cash funds to alter or constrain the conduct of executive functions. Whether production of the revenues necessary to fund the appropriations fully would require revision of historical patterns of executive agency activity cannot be ascertained. Here, there is no legislative control of the activities to be used to produce the funds analogous to the close legislative supervision of fund utilization disapproved in *Anderson v. Lamm*. At least under these

---

**5.** As stated by the Supreme Court of Mississippi, The right of the Legislature to control the public treasury, to determine the sources from which the public revenues shall be derived and the objects upon which they shall be expended, to dictate the time, the manner, and the means, both of their collection and disbursement, is firmly and inexpugnably established in our political system.

*Colbert v. State*, 86 Miss. 769, 775, 39 So. 65, 66 (1905), quoted with approval in *State ex rel. Meyer v. State Board of Equalization and Assessment*, 185 Neb. 490, 176 N.W.2d 920, 925 (1970) and *Welden v. Ray*, 229 N.W.2d 706, 709 (Iowa 1975).

circumstances, we find no reason to suggest that the exercise of the legislative power to designate sources of appropriations intrudes on the constitutionally protected scope of executive powers.

## B.

In addition to the constraints on legislative action imposed by the constitutional mandate of separation of powers, the content of appropriation bills is specifically limited by Article V, section 32 of the Colorado Constitution, which provides:

> The general appropriation bill shall embrace nothing but appropriations for the expense of the executive, legislative and judicial departments of the state, state institutions, interest on the public debt and for public schools. All other appropriations shall be made by separate bills, each embracing but one subject.

We have held that this section prohibits the legislature from including substantive legislation in a general appropriation bill. *Anderson v. Lamm*, 195 Colo. at 443, 579 P.2d at 624; *Burciaga v. Shea*, 187 Colo. 78, 84, 530 P.2d 508, 511 (1974); *People ex rel. Clement v. Spruance*, 8 Colo. 307, 319, 6 P. 831, 838 (1885).

An appropriation is the legislative designation of a certain amount of money as being set apart, allotted or assigned for a specific purpose. *People ex rel. Ammons v. Kennehan*, 55 Colo. 589, 136 P. 1033 (1913). The sole purpose of a general appropriation bill is to fund programs that have been separately authorized by other legislation. *Anderson v. Lamm*, 195 Colo. at 443, 579 P.2d at 624. As previously discussed, however, we conclude that the designation of the source of appropriated moneys is within the plenary power of the legislature, at least in the absence of a showing of facts demonstrating an intrusion on the separate power of the executive. Moreover, we are of the view that source designation is a proper part of an "appropriation" and does not constitute substantive legislation. *See People ex rel. Ammons v. Kennehan*, in which the existence of an appropriation for national guard troops was at issue. In concluding that a continuing appropriation had not been created, this court cited with approval an early California case, *McCauley v. Brooks*, 16 Cal. 11 (1860), holding that an appropriation consists of a designation of the amount and the fund out of which it should be paid. 55 Colo. at 600, 136 P. at 1036. Source designation imposes no limitations on the activities for which the funds are to be applied or on the executive functions through which the revenues are to be produced. We therefore reject the contention that the cash fund source specifications at issue here are substantive legislation included in an appropriation bill in violation of Article V, section 32 of the Colorado Constitution.

## V.

The governor asserts that the district court erred in concluding that the vetoes at issue here were invalid exercises of the item veto power granted to the governor by the Colorado Constitution. We uphold the district court's determination of this question.

The source of the governor's item veto power with respect to appropriation bills is found in Article IV, section 12 of the Colorado Constitution, which provides:

> The governor shall have power to disapprove of any item or items of any bill making appropriations of money, embracing distinct items, and the part or parts of the bill approved shall be law, and the item or items disapproved shall be void, unless enacted in the manner following: [providing procedures for override of veto].

The veto power is a legislative power. *Stong v. People ex rel. Curran*, 74 Colo. 283, 290, 220 P. 999, 1002 (1923). It is, however, merely a negative legislative pow-

er—it vests in the governor the authority to nullify, but not to create statutes. *Id.,* 74 Colo. at 292, 220 P. at 1003. The placement of this limited legislative capability in the executive is an exception to the separation of powers otherwise required by Article III of the Colorado Constitution and is in derogation of the general plan of state government. *Id.,* 74 Colo. at 290, 220 P. at 1002. Therefore, the veto power can be exercised only when clearly authorized by a specific provision of the constitution, and "the language conferring it must be strictly construed." *Id.*

All bills other than general appropriation bills must encompass only a single subject. Colo. Const., art. V, § 21. With the exception of appropriation bills, therefore, the governor must approve or disapprove a bill in its entirety. Colo. Const. art. IV, § 11. The prohibition against including multiple subjects in a single bill is meant to prevent abuses such as log rolling ("the practice of jumbling together in one act incongruous subjects in order to force a passage by uniting minorities with different interests when the particular provisions could not pass on their separate merits"), riders ("objectionable legislation, attached to general appropriation bills in order to force the Governor to veto the entire bill and thus stop the wheels of government or approve the obnoxious act"), and omnibus appropriation bills. *Stong v. People ex rel. Curran,* 74 Colo. at 291, 220 P. at 1002; *see In Re House Bill No. 168,* 21 Colo. 46, 39 P. 1096 (1885). The selective power of the item veto also was designed to curtail these abuses by enabling the governor to disapprove some items in a general appropriation bill while giving approval to others.

*See id.* In addition, the item veto power "serves the governmental need to have a balanced budget in place at the start of the fiscal year" by avoiding a requirement that the governor make an all or nothing choice with respect to an appropriation bill. *See Karcher v. Kean,* 479 A.2d 403, 416 (N.J. 1984). It is with the foregoing general principles and purposes in mind that we must determine whether the purported vetoes were directed at "items" within the meaning of section 12 of Article IV of the Colorado Constitution and therefore were within the scope of the governor's veto power, or whether they eliminated only parts of items and therefore were unauthorized and void, as the district court ruled.

The determination of what constitutes an entire item has vexed courts across the nation as an obstacle to the resolution of questions concerning the validity of gubernatorial vetoes under variously-worded constitutional provisions.[6] Because of the differences in the constitutional language and in the issues presented, a detailed review of those cases would contribute little to an analysis of the issues before us. The state of Virginia, however, has a constitution creating an item veto power in language similar to our own, and we obtain helpful guidance from the thoughtful decisions of its Supreme Court construing that language. *See Brault v. Holleman,* 217 Va. 441, 230 S.E.2d 238 (1976); *Commonwealth v. Dodson,* 176 Va. 281, 11 S.E.2d 120 (1940).

The Virginia Constitution empowers the governor "to veto any particular item or items of an appropriation bill." Va. Const. art. V, § 6. In 1976, the Virginia legislature appropriated sums for various speci-

---

**6.** Some of the leading cases that have addressed this question are *Fairfield v. Foster,* 25 Ariz. 146, 214 P. 319 (1923); *Reardon v. Riley,* 10 Cal.2d 531, 76 P. 101 (1938); *Caldwell v. Meskill,* 164 Conn. 299, 320 A.2d 788 (1973); *Green v. Rawls,* 122 So.2d 10 (Fla.1960); *Fergus v. Russel,* 270 Ill. 304, 110 N.E. 130 (1915); *Welden v. Ray,* 229 N.W.2d 706 (Iowa 1975); *In Re Opinion of the Justices,* 294 Mass. 616, 2 N.E.2d 789 (1936); *Wood v. State Administrative Board,* 255 Mich.

220, 238 N.W. 16 (1931); *State v. Holder,* 76 Miss. 158, 23 So. 643 (1898); *State ex rel. Cason v. Bond,* 495 S.W.2d 385 (Mo.1973); *Karcher v. Kean,* 97 N.J. 483, 479 A.2d 403 (1984); *State ex rel. Sego v. Kirkpatrick,* 86 N.M. 359, 524 P.2d 975 (1974); *State ex rel. Brown v. Ferguson,* 32 Ohio St.2d 245, 291 N.E.2d 434 (1972); *Fulmore v. Lane,* 104 Tex. 499, 140 S.W. 405 (1911); *State v. Henry,* 218 Wis. 302, 260 N.W. 486 (1935).

fied expenses of the Northern Virginia Transportation Commission. The governor vetoed one such authorization, for capital expenses of metro rail, while approving the others. The Virginia Supreme Court upheld the veto against the challenge that the veto did not relate to an entire item because it did not include all the appropriations for the transportation commission. In so ruling, the court defined "item" as follows:

> In the constitutional sense, an item of an appropriation bill is an indivisible sum of money dedicated to a stated purpose; the term refers to something which may be eliminated from the bill without affecting the enactment's other purposes or provisions.

*Brault v. Holleman*, 217 Va. 441, 230 S.E.2d 238, 242 (1976). Elaborating, the court said:

> The real question, therefore, is whether, from the terms of the appropriation bill itself, several appropriations relating to the same subject are so legally "tied up," are made so legally interdependent, that one cannot be eliminated from the enactment without, in the words of [*Commonwealth v. Dodson* [176 Va. 281], 11 S.E.2d 120 (Va.1940)], "affecting its other purposes or provisions." If it is clear from the appropriation bill that, with the disapproved provision eliminated, the approved appropriations cannot effectively serve their intended purposes, the attempted elimination is invalid.

*Id.* 230 S.E.2d at 243–44.[7]

The only occasion on which our court has considered the question of the meaning of the term "item" for the purpose of defining the scope of the governor's power of item veto was in *Stong v. People ex rel. Curran.* There, one section of a long bill made an appropriation for the Industrial Commission, consisting of eleven separate authorizations including an appropriation for a "Secretary (attorney)" for $3500 in 1923 and a like amount in 1924. *Id.* 74 Colo. at 284, 220 P. at 1000. The governor approved the entire bill, except for the appropriation for the Industrial Commission secretary for which he approved $5250 and disapproved $1750. We held that the appropriation for the secretary was a separate, distinct and indivisible item and that the governor had no authority to disapprove it in part as he had purported to do. *Id.* 74 Colo. at 292, 220 P. at 1003.

In the present case we must decide whether specifications of the sources of funds for an appropriation are themselves items, or only parts of items. Each challenged veto relates to the legislature's designation of the source from which that portion of the appropriation to be cash funded shall be derived. We have discovered no case in this jurisdiction or elsewhere that has presented the precise question now before us. Taking guidance, however, from the general principles previously stated, we conclude that the source of funding is as much a part of an item of appropriation as the amount of money appropriated and the purpose to which it is to be devoted. It cannot be removed from the bill without affecting the legislature's intendment in enacting the measure. *See generally Bengzon v. Secretary*, 299 U.S. 410, 57 S.Ct. 252, 81 L.Ed. 312 (1937). In *Stong v. People ex rel. Curran* we held that an appropriation of specific amounts to employ a secretary for the Industrial Commission was a "purpose, subject and amount [that were] part of a single item, distinct, separate and indivisible." The vetoed provisions before us here affect the source of funds, an additional element that was not

---

7. In colorful language, frequently quoted, an earlier Virginia case stated:

> That term ["item"], as used in the Constitution, refers to something which may be taken out of a bill without affecting its other purposes or provisions. It is something which can be lifted bodily from it rather than cut out. No damage can be done to the surrounding legislative tissue, nor should any scar tissue result therefrom.

*Commonwealth v. Dodson,* 176 Va. 281, 11 S.E.2d 120, 124 (1940).

present in *Stong*. Nonetheless, they are indivisible parts of the items to which they relate. We view these restrictions on funding sources as integral to and legally interdependent with the other portions of the items of which they are a part. *See Brault v. Holleman*, 217 Va. 441, 230 S.E.2d 238, 242–44 (1976). Funding source restrictions are not separate items and therefore cannot be vetoed without vetoing the remainder of the items. The governor's attempt to do so was void.[8]

We derive further support for this conclusion from consideration of the principle that the veto power is a negative legislative power, not a positive one. *Stong v. People ex rel. Curran*, 74 Colo. at 290, 220 P. at 1002. If the governor could veto the source of an appropriation while leaving the amount intact, this would have the impermissible positive effect of prescribing that the moneys to fund the appropriation must come from otherwise-appropriated funds. Such a determination is for the general assembly to make in exercise of its plenary power of appropriation and is beyond the scope of the governor's limited and negative legislative power encompassed within the item veto authorization.

The validity of the governor's veto of certain provisions of the 1981 supplemental appropriation bill can be analyzed using the principles set forth earlier in this opinion. The original bill prescribed by an asterisked note that $4,505,659 of the moneys for the portion of certain appropriations to be cash funded would be obtained from the highway users tax fund. This bill was approved by the governor. In the 1981 supplemental appropriation bill, the legislature revised certain of the asterisked appropriations of the 1981 appropriation bill.

Additionally, the $4,505,659 sum was struck and the amount of $2,493,125 was substituted, thereby reducing the amount of the revised appropriations to be paid from the highway users tax fund. The governor, by lining through the entire note, intended to restore the original $4,505,659 highway users tax fund designation, as sufficiently indicated by his April 2, 1982, veto message in which he stated that "[a] legal and accounting review of the Highway Users Tax Fund appropriation limit indicates that a higher limit than currently utilized is justified." However, the governor did not purport to veto the changes in the amounts of the appropriations to which the asterisked note related. Thus, even if the changes in the asterisked appropriations and the asterisked explanatory note taken together constitute an item that could have been vetoed in its entirety by the governor, the note, by itself, was only part of an item, and the attempt to veto the change in the note was not within the governor's item veto power under Article IV, section 12 of the Colorado Constitution, as the district court ruled.

■ The governor, however, contends that he has the power, independent of the item veto authorization, to veto unconstitutional provisions in an appropriation bill. This power, because it does not spring from the item veto provisions of Article IV, section 12 of the Colorado Constitution, the argument proceeds, is not limited to distinct items but can be exercised as to any part of an item deemed unconstitutional by the governor. We reject this argument.

■ The veto power of the governor, when validly exercised, is plenary, and this court will not inquire into the justifications

---

8. The trial court held that the governor could veto specific source designations for cash fund appropriations if he also reduced the total amount appropriated by the amount the legislature specified to be received from a particular source. Even though the general assembly agrees that this is the case, it was unnecessary to decide this question and we express no opinion concerning it. We do note, however, that in order to assure that the purposes of the item veto power are effectuated and that the legislative appropriation power is not infringed, such questions should be decided on a case-by-case basis in the context of the particular facts presented. *See Anderson v. Lamm,* 195 Colo. 437, 441–42, 579 P.2d 620, 623; *MacManus v. Love,* 179 Colo. 218, 221, 499 P.2d 609, 610 (1972).

for its use. However, in *Stong v. People ex rel. Curran*, as noted earlier, we held that the veto power is a legislative power, an exception to the separation of powers required by Article III of the Colorado Constitution, and in derogation of the general plan of state government. 74 Colo. at 290, 220 P. at 1002. Therefore, the veto power can be exercised only when clearly authorized by the constitution, and the language conferring it is to be strictly construed. These long-established principles, from which we discern no reason to depart, provide a complete answer to the governor's claim of a power of veto independent of sections 11 and 12 of Article IV of the Colorado Constitution.

The judgment of the district court, to the extent that it is before us in this appeal, is affirmed.

QUINN, C.J., dissents and ROVIRA, J., joins in the dissent.

### APPENDIX

The vetoes at issue here with respect to the 1982 long bill are as follows:

1. An appropriation of $502,954 was made for personal services in the office of the executive director of the department of administration. Of this amount, $275,580 was specified to come from cash funds. An asterisk was placed by the latter amount, and the corresponding note stated "these funds shall be from agency indirect costs." Ch. 1, sec. 1, 1982 Colo.Sess.Laws 1, 6. The governor vetoed this asterisked note.

2. An appropriation of $3,298,274 was made for air pollution control in the office of health protection of the department of health. Of this amount, $1,662,021 was specified to come from cash funds. An asterisk was placed by this amount and the corresponding note provided:

Of this amount, $894,186 shall be from fees collected pursuant to Section 42–4–302(4)(d), C.R.S.1973, $563,359 shall be

from fees collected pursuant to Section 42–4–313(7)(a), C.R.S.1973, and $204,476 shall be from fees for stationary source permits. Included in this amount is $32,737 as Vehicle Emissions' share of Departmental Administration costs, $2,817 as Vehicle Emissions' share of statewide indirect costs, $41,666 as Mobile Sources' share of Departmental Administration costs, $3,586 as Mobile Sources' share of statewide indirect costs, $56,547 as Vehicle Inspections' share of Departmental Administration costs, and $4,866 as Vehicle Emissions' share of statewide indirect costs.

Ch. 1, sec. 1, 1982 Colo.Sess.Laws at 17.

The governor vetoed this note in its entirety.

3. An appropriation of $14,916,537 was made for administration of family health services in the office of medical care of the department of health. Of this amount, $1,730,863 was specified to come from cash funds. An asterisk was placed by this amount and the corresponding note provided:

Of these funds, $1,286,118(T) shall be from Title XIX funds from the Department of Social Services, $88,875 shall be from genetic testing fees, $198,841 shall be from a grant from the Robert Wood Johnson Foundation, $154,464 shall be from other government agencies, and $2,565 shall be from private donations.

Ch. 1, sec. 1, 1982 Colo.Sess.Laws at 19.

The governor vetoed this note in its entirety.

4. An appropriation of $4,186,739 was made for departmental administration of the administration and support budget for the department of health. Of this amount, $2,293,236 was specified to come from cash funds. An asterisk was placed by this latter amount and the corresponding note provided:

Of this amount, $35,554(T) shall come from vehicle emissions cash funds, $45,252(T) shall come from mobile sources cash funds, $61,413(T) shall come from vehicle inspection cash funds, $126,058(T) shall come from waste water

permit cash funds, $135,755(T) shall come from cash funded activities of the Laboratory, $1,706,669(T) shall be from federal indirect cost recoveries, and $182,535 shall be the cash funded portion of salary survey costs, anniversary increases, and shift differential.

Ch. 1, sec. 1, 1982 Colo.Sess.Laws at 21.

The governor vetoed this note in its entirety.

5. An appropriation of $2,479,430 was made for laboratory services in the administration and support budget of the department of health. Of this amount, $1,036,599 was specified to come from cash funds. An asterisk was placed by this latter amount and the corresponding note provided:

Of this amount, $116,160 shall be from methadone drug testing revenues, $70,857 shall be from streptococcus culture test revenues, $550,598 shall be from genetic testing revenues, $187,421 shall be from drinking water analysis revenues, $76,715 shall be from milk testing, and $34,848 shall be from premarital blood testing. Included in this amount is $10,757 as the Laboratory's cash activities share of statewide indirect costs and $124,998 as the Laboratory's cash activities share of departmental administration costs.

Ch. 1, sec. 1, 1982 Colo.Sess.Laws at 21.

The governor vetoed this note in its entirety.

6. An appropriation of $2,911,118 was made for administration and personnel in the department of labor and employment. Of this amount, $898,062 was specified to come from cash funds. An asterisk was placed by this latter amount and the corresponding footnote provided:

Of this amount, $247,492 shall be in statewide indirect costs, $81,713 shall be for legal services use by cash funded agencies for salary survey and anniversary increases, and the remainder shall be in agency indirect costs. Of the $456,-

303 in cash funds for salary survey and anniversary increases, $6,635 shall be from the Highway Users Tax Fund for the oil inspection program, and the remainder shall be from other cash-funded programs within the Department.

Ch. 1, sec. 1, 1982 Colo.Sess.Laws at 36.

The governor vetoed this note in its entirety.

The governor also vetoed one change in the 1981 supplemental appropriation bill. As originally enacted, the 1981 long bill had made certain appropriations for expenses of the accounts and control division of the department of administration. Some of the cash fund appropriations in this category were identified by an asterisked note specifying that "of these amounts, $4,505,659 shall be from the Highway Users Tax Fund." In the 1981 supplemental appropriation bill the legislature lined through the $4,505,659 figure and in its place substituted $2,493,125, also revising certain of the asterisked items to which the note applied. Ch. 2, sec. 2, 1982 Colo.Sess.Laws at 98. The governor registered his veto by lining through the entire asterisked note.

QUINN, Chief Justice, dissenting:

I respectfully dissent from parts IV and V of the court's opinion. In part IV the majority holds that the appropriation bills at issue here do not violate the separation-of-powers doctrine by impermissibly infringing on the Governor's constitutional power to administer appropriated funds and that, therefore, the district court properly entered summary judgment on behalf of the General Assembly with respect to the Governor's constitutional challenge to these bills. In contrast to the majority, I believe that the resolution of the separation-of-powers issue involves a mixed question of fact and law that should not have been resolved by summary judgment. In part V, the court holds that the Governor's vetoes of the appropriation bills were invalid because the vetoed provisions constitute only "parts of items" rather than "items."

I view the majority's interpretation of the term "item" as inconsistent with the purpose underlying the item veto power granted to the Governor by article IV, section 12 of the Colorado Constitution.

## I.

C.R.C.P. 56(c) states that summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "In the context of summary judgment proceedings, a material fact is simply a fact the resolution of which will affect the outcome of the case. A mixed question of law and fact involves the application of a legal standard to a particular set of evidentiary facts in resolving a legal issue." *Mt. Emmons Mining Co. v. Town of Crested Butte,* 690 P.2d 231, 239 (Colo.1984). Being a drastic remedy, summary judgment should be granted only when the evidentiary and legal prerequisites are clearly established. *E.g., Gleason v. Guzman,* 623 P.2d 378 (Colo.1981); *Abrahamsen v. Mountain States Tele. & Tele. Co.,* 177 Colo. 422, 494 P.2d 1287 (1972). Any doubt as to the propriety of summary judgment should be resolved against the moving party. *E.g., Jones v. Dressel,* 623 P.2d 370 (Colo.1981). As we stated in *Mt. Emmons Mining Co.,* 690 P.2d at 239:

> Even if the historical facts underlying the mixed question might be undisputed, as long as a reasonable trier of fact nevertheless could draw divergent inferences from the application of the legal criteria to the facts, summary judgment should be denied. Not only is the party against whom the judgment might otherwise be entered entitled to the benefit of all favorable inferences that may be drawn from the facts, but, with the case in this particular evidentiary posture, it cannot be definitively determined that the party to be favored by the court's putative action is entitled to judgment as a matter of law.

The majority, relying on this court's decision in *Anderson v. Lamm,* 195 Colo. 437, 579 P.2d 620 (1978), concedes that, in fulfillment of the constitutional mandate to faithfully execute the laws, Colo. Const. art. IV, § 2, the Governor must be given the authority "to administer the funds appropriated by the legislature for programs enacted by the legislature" and that "[t]he [G]eneral [A]ssembly must not interfere with the exercise of that power" by attaching to a general appropriation bill conditions which purport to reserve to the legislature those "powers of close supervision that are essentially executive in character." *Ante,* at 1380 (quoting *Anderson,* 195 Colo. at 442, 579 P.2d at 624). The majority further acknowledges that "a close particularization of the cash revenue sources and amounts to be used to meet an appropriation exerts an indirect pressure on the executive to allocate administrative assets and conduct administrative activities so as to generate revenues necessary to fund the appropriations fully." *Ante,* at 1381. Notwithstanding these concessions, the majority holds that the legislative conditions specifying the sources of cash funding pass constitutional muster because, in the majority's view, there is no evidence in the record to support the conclusion that the specification of sources would affect the Governor's constitutional authority to administer the executive department of government. With this conclusion I disagree.

The appropriation bills on their face raise the issue of whether the amount of cash funding on which an overall appropriation is conditioned will significantly interfere with the Governor's constitutional authority to administer the funds appropriated to the executive department of government. Resolution of that question will necessarily require the application of a legal standard —namely, the General Assembly may not interfere with the Governor's constitutional authority to administer funds appropriated for programs enacted by the legislature, *Anderson,* 195 Colo. at 442, 579 P.2d at 623—to the particular evidentiary facts in-

volved in the case.[1] In a summary judgment proceeding such as this, even though the facts may be undisputed, the Governor is nonetheless entitled to the benefit of the inference that the General Assembly's specification of the amount of cash funding might well require the executive department to substantially alter the type and level of activities in order to ensure that its operations are fully funded. *Mt. Emmons Mining Co.*, 690 P.2d at 239. Such a change in program activities could directly affect personnel and resource allocation, matters clearly within the Governor's constitutional power of administration. *Anderson*, 195 Colo. at 442, 579 P.2d at 623–24. The state of the record is such that, in my view, it cannot be definitively determined that the appropriation statutes have not so conditioned the executive power of administration as to violate the separation of powers mandated by article III of the Colorado Constitution.

The majority's resolution in this case puts the Governor to a Hobson's choice. As explained in part II, *infra*, the Governor must either accept the detailed restrictions imposed on funding sources for the appropriation of a particular governmental function, along with the consequential encumbering of his constitutional authority to administer that function, or he must veto not only the specification of funding sources but also the entire appropriation to which this specification relates. In view of this court's recent opinion in *Colorado General Assembly v. Lamm*, 700 P.2d 508 (Colo.1985), which prevents the Governor from transferring surplus funds from one executive department of government to another even though the latter's appropriations are insufficient to accomplish its governmental mission, today's opinion holds out the potential for further constraint by causing some of the executive programs to operate at or above specified levels of activity in order to ensure the appropriation set by the General Assembly. These constraints can only frustrate rather than enhance the efficient operation of the many departments within the executive branch of government.

## II.

While I would reverse and remand the case to the district court for trial on the separation-of-powers issue, I believe it appropriate to address the majority's construction of the item veto provision of article IV, section 12 of the Colorado Constitution. The majority construes "item" to mean that when, as here, an appropriation bill specifies the source of funds for a particular appropriation, the funding source is merely an indivisible "part of an item" that cannot be vetoed without vetoing the item or items to which the source of funds relates. I view this interpretation of the term "item" as ill-founded and conducive to legislative abuse of the appropriation process.

The Colorado Constitution expressly permits the Governor to selectively veto individual items contained in appropriation bills. Because appropriation bills, unlike other bills, may embrace more than one subject, Colo. Const. art. V, § 21, such bills are subject to the abuses of "log rolling" and "riders." The "item" veto power en-

---

**1.** To the extent that a more thorough factual record may be required for a resolution of the separation-of-powers issue on the merits, the parties on remand could present evidence relating to the historical levels of actual program receipts in the years immediately preceding the fiscal 1981–82 appropriations. The court would then be in a position to compare these amounts with the cash funded appropriations in the challenged statute. Evidence establishing that the levels of receipts in preceding years were substantially less than the amount of cash funding specified in the fiscal 1981–82 appropriations would be some indication that the General Assembly had exercised its power to specify funding sources for appropriations inconsistently with the executive power of administration. If, on the other hand, actual program receipts exceeded the amounts specified for corresponding programs in the vetoed footnotes, the court could conclude that the legislative action did not improperly encroach on legislative authority.

ables the Governor to combat these abuses by disapproving particular "items" in an appropriation bill without vetoing the entire bill. *See Stong v. People, ex rel. Curran*, 74 Colo. 283, 220 P. 999 (1923); *Green v. Rawls*, 122 So.2d 10 (Fla.1960); *Commonwealth ex rel. Attorney General v. Barnett*, 199 Pa. 161, 48 A. 976 (1901). Given the clear purpose underlying this selective veto power of the Governor, the term "item" should be interpreted in a manner that permits the Governor to curb legislative abuses without providing the executive department with positive legislative authority. *See Stong*, 74 Colo. at 292, 220 P. at 1003.

Although no case appears to address the precise issue before us, several courts have grappled with analogous issues and have developed what I believe should be the controlling principle for this case. *Fairfield v. Foster*, 25 Ariz. 146, 214 P. 319 (1923), is representative of these cases. There, the Arizona legislature appropriated $72,880 to the Corporation Commission. Of that appropriated amount, $53,880 was designated for salaries and wages, and of this latter amount $2,100 was appropriated for one rate clerk's annual salary. The Governor, acting under a constitutional provision allowing him to object to one or more "items of appropriation of money," vetoed the clause providing for "one rate clerk ... $2,100 per annum." The plaintiff in that case contended that the only item subject to veto was either the entire $72,880 appropriated to the Corporation Commission or the $53,880 appropriated for salaries and wages, but that the $2,100 per annum appropriated for one "rate clerk" was merely a legislative directive and not an appropriation of a particular "item" within the veto power of the Governor. The Arizona Supreme Court rejected this contention and concluded that such a construction would utterly negate the Governor's authority to control log rolling:

If we follow that line of reasoning, the Legislature may simply make a separate appropriation in any lump sum for each department, or, by proper language in the general appropriation bill, consolidate the funds for almost the entire state government, and, under the guise of "directing" the expenditure of the money, limit its application to matters and amounts which the Governor believes to be highly injurious in part to the best interests of the state, practically compelling him to choose between abandoning the veto power, or suspending the operations of the government, thus nullifying the provisions of the Constitution under consideration, and going back to the very conditions its makers sought to avoid.

*Id.* 214 P. at 323. To preserve the Governor's veto authority, the *Fairfield* court defined "item" as "a separate particular in an enumeration, account or total." *Id.* This court expressly approved *Fairfield*'s reasoning in *Stong*, 74 Colo. at 287, 220 P. at 1001, characterizing the decision as a "remarkably able opinion."

The only real difference between the facts in *Fairfield* and the instant case is that this case involves specification of funding *sources*, while *Fairfield* involved specification of funding *objects*. Here, as in *Fairfield*, specified sums tied to particular purposes were included in larger sums appropriated for more inclusive programs. The specified sums here are no less "items" than were the funding objects involved in *Fairfield*. It was therefore entirely within the Governor's authority to veto these funding sources. *See also Brown v. Firestone*, 382 So.2d 654 (Fla. 1980) (in the context of a qualification or restriction "a specific appropriation is the smallest identifiable fund to which a qualification or restriction is or can be directly and logically related"); *Karcher v. Kean*, 97 N.J. 483, 479 A.2d 403 (1984) (approving language in *Brown v. Firestone*); *State ex rel. Brotherton v. Blankenship*, 158 W.Va. 390, 214 S.E.2d 467 (W.Va.1975) (item may be "any separate subject and amount within an account or total").

The majority's interpretation of the term "item" logically leads to a situation that permits the General Assembly to mandate the purposes for which money will be spent while shielding such appropriation from a governor's veto under the umbrella of a larger inclusive lump sum appropriation. The fiscal 1981–82 supplemental appropriation bill at issue provides an example of this potential for abuse. That bill provided a total appropriation of $30,728,480 for the Division of Accounts and Control in the Department of Administration. Ch. 2, sec. 2, 1982 Colo.Sess.Laws 96, 97–98. This appropriation was broken down into eleven subcategories, including appropriations for administration, group health and life, workmen's compensation insurance premiums and shift differentials. The administration subcategory was further divided into three appropriations for personal services, operating expenses, and travel and subsistence. The majority opinion could possibly be read to prohibit the Governor from vetoing the appropriation for personal services, or the inclusive appropriation for administration, because both of these categories are merely "parts of an item." By comparison, under the definition of item as "a separate particular in an enumeration, account or total," *Fairfield v. Foster*, 214 P. 319, 323 (Ariz.1923), I would hold that the Governor could veto the appropriation for personal services or any of the appropriations for the eleven subcategories within the Division of Accounts and Control, with the effect of reducing the overall appropriation by the total of the individual vetoed appropriations. This resolution would properly limit the scope of the Governor's veto power and at the same time permit the Governor to counteract what might be perceived as improper efforts at log rolling or legislative riders.[2]

I would also regard the Governor's veto of the asterisked note in the fiscal 1981–82 supplemental appropriation bill as having the obviously intended effect of increasing the moneys available from the highway users fund from $2,493,125 to $4,505,000 as appropriated in the original 1981–82 long bill. This asterisked note constituted an item as did the other notes in question. Because the vetoed note was an amendment to a preexisting note, the Governor's veto simply voided the amendment, thereby leaving the original note in effect.

For the above reasons, I would reverse the summary judgment and remand the case to the district court for further proceedings.

I am authorized to say that Justice ROVIRA joins me in this dissent.

2. If the Governor were able to veto an individual item contained within the larger overall appropriation without reducing the overall appropriation by the amount of the vetoed item, the Governor could thereby remove any legislative condition as to how that money could be spent. Although some courts have construed the Governor's veto authority to allow this result, *e.g.*, *Reardon v. Riley*, 10 Cal.2d 531, 76 P.2d 101 (1938); *Green v. Rawls*, 122 So.2d 10 (Fla.1960), the effect of such a construction is to vest the Governor with a positive legislative power that is broader than necessary to combat log rolling or other legislative abuse. In view of this potential for executive abuse of the legislative power of appropriation, I agree with the majority's rejection of such a construction, because it is inimical to the system of checks and balances contemplated by Article III of the Colorado Constitution.